IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUBURBAN BUICK, INC.,                    )
                                         )
            Plaintiff,                   )        No. 08 C 0370
        v.                               )
                                         )        Judge Robert W. Gettleman
JERRY GARGO, GAIL A. GARGO,              )
NICHOLAS G. GARGO, DANIEL J. GARGO       )
CHARLES N. OWEN, individually and        )
as president of CHUCK OWEN AUTO BODY,     )
INC., DAVID C. MORMON, individually and as )
President of DAVE'S AUTO BODY,            )
GREG S. MELVIN, KATHERINE POLLACK,       )
ROSEMARY YOUNG, GARGO CUSTOM             )
HOMES, and GO SERVICE                    )
                                         )
            Defendants.                  )


## MEMORANDUM OPINION AND ORDER

Plaintiff Suburban Buick, Inc. has brought a six-count complaint against defendants Jerry

D. Gargo ("J. Gargo"); his wife, Gail A. Gargo ("G. Gargo"); their sons, Nicholas G. ("N.

Gargo") and Daniel J. Gargo ("D. Gargo" and together with N. Gargo, "the Gargo Sons");

Charles N. Owen ("Owen"); Owen's company, Chuck Owen Auto Body, Inc. ("COAB"); David

C. Mormon ("Mormon"); Mormon's company, Dave's Auto Body; Greg S. Melvin ("Melvin");

Katherine Pollack ("Pollack"); Rosemary Young ("Young"); and two companies started by Jerry

Gargo, Gargo Custom Homes and GO Service.[1]  Plaintiff originally filed a verified complaint on

January 17, 2008.  On July 30, 2008, plaintiff sought and was granted leave of the court to file a

---

[1]The following individuals/entities have been served but have not yet appeared or responded to
the complaint: Dave's Auto Body, Gargo Custom Homes & GO Service.

first amended verified complaint. The first amended complaint (the "complaint") was filed on August 29, 2008.

The complaint: alleges violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, based on wire fraud (Count I), mail fraud (Count II), and money laundering (Count III); seeks injunctive relief to restrict defendants from disposing or selling certain assets (Count IV); and asserts claims for conversion (Count V) and civil conspiracy (Count VI). All of the counts are based on alleged intentional fraudulent conduct by defendants. The Court's jurisdiction is invoked pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331.

Several of the defendants have filed motions to dismiss the first amended verified complaint pursuant to Fed. R. Civ. P. 9(b) for failure to plead allegations of fraud with particularity, and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons explained below, the motions are granted in part and denied in part.

## RELEVANT FACTS

The complaint alleges that the various defendants conspired to defraud Suburban Buick, a General Motors car dealership located in Wheaton, Illinois, of money and the honest value of its employees' services, with defendant Jerry Gargo serving as the central figure in all branches of the conspiracy. Jerry Gargo was a manager and/or officer of Suburban Buick. Nicholas and Daniel Gargo were unauthorized employees of Suburban Buick, hired by their father, Jerry Gargo. Daniel Gargo was a manager of Suburban Buick. Charles Owen is the owner and principal operator of Chuck Owen Auto Body, Inc., a company that he allegedly used in furtherance of the purported conspiracy. David Mormon owns and operates Dave's Auto Body, another defendant, which was also allegedly used in furtherance of the purported conspiracy.

Mormon was previously a Suburban Buick employee. Greg Melvin served as the parts department manager of Suburban Buick. Katherine Pollack was Suburban Buick's office manager and treasurer and Rosemary Young was her assistant. Gargo Custom Homes is an entity through which the owners, Defendants Jerry and his wife, Gail Gargo, allegedly invested funds defrauded from Suburban Buick. GO Services is an entity that was allegedly organized by Jerry Gargo to facilitate the conspiracy.

Plaintiff alleges that defendants conspired to engage in a pattern of racketeering activity by operating three kinds of scams through Suburban Buick; the defendant entities, Chuck Owen Auto Body, Dave's Auto Body, GO Services; and a non-party, Auto Service South, with J. Gargo functioning as the central figure in the conspiracy. The alleged scams are: (1) an auto body repair scam, (2) an auto parts scam, and (3) an unauthorized pay and salary scam.

### *Auto Body Repair Scam*

With respect to the auto body repair scam, plaintiff alleges that defendants J. Gargo and Owen entered into an illegal agreement to defraud Suburban Buick of funds by falsifying work orders. To accomplish this task, J. Gargo and Owen created false work orders for General Motors vehicles still under warranty. The work orders identified vehicles for which repair work was neither necessary nor actually obtained. The "repair work" was outsourced to Owen's company, Chuck Owen Auto Body. Owen would then create a repair order on his company's letterhead and mail the order to Suburban Buick for payment. Ultimately, Owen received payment from Suburban Buick based upon these invoices.[2] Plaintiff alleges that Owen sent a

---

[2]General Motors ultimately reimbursed Suburban Buick for these expenses, as the identified vehicles were still under warranty.

3

pre-determined amount of money (about fifty percent) from these payments to GO Service, a company owned by J. Gargo. J. Gargo and Owen purportedly met on a monthly basis in furtherance of this scam.

### Auto Parts Scam

With respect to the auto parts scam, plaintiff alleges that defendants Greg Melvin and J. Gargo converted auto parts acquired with Suburban Buick funds. Specifically, plaintiff alleges that Melvin, J. Gargo, and Owen operated a scheme whereby Owen would purchase auto parts from Suburban Buick through J. Gargo and Melvin at fifty percent of Suburban Buick's cost for the part. In furtherance of the scheme, Owen would telephone J. Gargo with a request for a specific auto part. J. Gargo redirected all such calls to Melvin, who, as parts department manager, would order the requested part using Suburban Buick's funds. Upon receipt of the parts, Melvin removed them from Suburban Buick's inventory and manipulated inventory records to conceal their theft. Melvin, together with J. Gargo, then sold the parts to Owen and split the proceeds from these sales. Owen then sold the parts, which he knew to be stolen goods, to his customers at full retail price, thus enriching himself. Plaintiff also alleges that Melvin and J. Gargo sold David Mormon, a former Suburban Buick mechanic, transmissions for less than the amount Suburban Buick would usually charge its retail customers.[3]

### Unauthorized Pay and Salary Scam

Plaintiff alleges that defendants J. Gargo, the Gargo Sons, Greg Melvin, Pollack, and Young conspired to defraud Suburban Buick through an unauthorized pay and salary scheme.

---

[3]General Motors also reimbursed Suburban Buick for the costs of these transmissions upon reliance on Gargo's representations that the transmissions were for vehicles under warranty.

Specifically, plaintiff alleges that defendants J. Gargo (as general manager), Pollack (as office manager and treasurer), and Young (as Pollack's assistant) used their authority and positions to provide unauthorized pay increases and other compensation to themselves, the Gargo Sons, and Melvin, without approval of Suburban Buick's board of directors. Jerry Gargo, Pollack, and Young had the authority to act as signatories on Suburban Buick's checks. Under Suburban Buick's policy, all three were signatories on direct deposit payroll checks. The complaint identifies at least ten occasions on which defendants gave and/or received unauthorized compensation from the fall of 2003 through the summer of 2004. Plaintiff also alleges that J. Gargo hired his sons, Daniel and Nicholas, without plaintiff's authorization.

## DISCUSSION

Defendants, Greg Melvin, Charles Owen, and COAB have moved to dismiss under Rules 9(b) and 12(b)(6), arguing that the complaint: 1) fails to allege with particularity defendants' misconduct in Counts I (RICO Wire Fraud), II (RICO Mail Fraud), III (RICO Money Laundering), V (Conversion), and VI (Civil Conspiracy); 2) fails to allege with particularity that Suburban Bank is the defrauded and damaged party in Counts I, II, III, V, and VI; 3) fails to satisfy the elements for a RICO claim and, thus, fails to state a claim upon which relief can be granted in Counts I, II, and III; and 4) fails to state a claim for injunctive relief in Count IV. For the reasons discussed below, their motions are granted.

Defendants, J. Gargo, G. Gargo, and the Gargo Sons broadly seek dismissal on Rule 9(b) and 12(b)(6) grounds. G. Gargo and the Gargo Sons note that the complaint fails to allege any wrongdoing on their part with particularity. For the reasons discussed below, the court agrees and these motions are granted.

Defendants Pollack and Young seek 12(b)(6) dismissal of all counts on grounds that the allegations are "unclear," "contradictory and patently false" in comparison to police reports they attach to their motion to dismiss.[4] They also argue that plaintiff fails to allege that they actively participated in or had the requisite knowledge about the alleged fraudulent schemes; they simply performed their duties as Suburban Buick employees. For the reasons discussed below, the court denies Pollack and Young's joint motion to dismiss.

## ANALYSIS

## I.    LEGAL STANDARDS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001). Further, the court will not consider the documents or other materials beyond those attached to or referred by the complaint itself. See Fed. R. Civ. P. 12(d); see also Scibetta v. Rehtmeyer, Inc., No. 04C5246, 2005 WL 331559, at *1-*2 (N.D. Ill. Feb. 9, 2005) (considering contracts attached to the plaintiff's complaint, but not exhibits attached to a motion to dismiss) (citing Wright v. Assoc. Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994)). To survive a Rule 12(b)(6) motion, a plaintiff

---

[4]Plaintiff has neither attached nor referred to these reports in its complaint.

need not provide detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Allegations of fraud are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). Fraud must be pled with particularity, which means the complaint must allege the "who, what, when, where and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). At the motion to dismiss stage, Rule 9(b) requires only that the plaintiff identify the alleged misrepresentations, not actually prove that the statement was false. See Bankers Trust Co. v. Old Republic Ins., Co., 959 F.2d 677, 683 (7th Cir. 1992). This standard also applies to allegations of predicate acts of fraud in the RICO context. See Slaney v. Int'l. Amateur Athletic Fed'n, 244 F.3d 580, 597-99 (7th Cir. 2001); Haroco, Inc. v. Am. Natl. Bank and Trust Co., 747 F.2d 384, 405 (7th Cir. 1984) (finding that the plaintiff adequately specified the transactions, the false representations, and the identities of those involved). The pleadings must be specific enough to put defendants on notice of the conduct alleged.

In the instant case, the court finds that plaintiff has failed to allege with particularity a grand scheme to defraud Suburban Buick. The complaint identifies six entities as RICO enterprises under 18 U.S.C. § 1961(4), but plaintiff has failed to identify which enterprises were used by which defendants to conduct which predicate acts in violation of the RICO statute. See Appraisers Coalition v. Appraisal Inst., No. 93C913, 1993 WL 326671, at *7 (N.D. Ill. Aug. 18, 1993) (noting the importance of linking each identified enterprise with at least one predicate act).

Further, plaintiff fails to identify to which defendant(s) each of the six counts applies. In sum, plaintiff's allegations are insufficient to put the defendants on notice of the alleged conduct.

## II.    J. GARGO'S MOTION TO DISMISS

Defendant J. Gargo moves to dismiss the complaint on the following four grounds: 1) plaintiff's failure to allege that it was defrauded and damaged by defendants; 2) the complaint's liberal use of "Defendants Gargo" and "Gargo" lacks specificity as to each defendant's conduct and as to the application of each count to each defendant; 3) the lack of specificity concerning each defendant's management of an enterprise; and 4) plaintiff's Count IV, for an injunction, is an improper means of seeking injunctive relief. The court agrees that plaintiff's allegations are insufficient.

The court agrees that the complaint lacks the specificity required under Fed. R. Civ. P. 9(b) for RICO violations and other fraud claims. "[I]n a case involving multiple defendants…'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994) (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)). The complaint should not lump multiple defendants together, but should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." Id. at 778 (quoting Balabanos v. North Am. Inv. Group, Ltd., 708 F. Supp. 1488, 1493 (N.D. Ill. 1988)). As defendant J. Gargo duly notes, the amended complaint is replete with references to "Defendants Gargo" and "Gargo" when discussing the conduct of, and counts alleged against, each of the four Gargo defendants. The amended complaint also contains

many broad references to "Defendants".  This style of pleading is wholly inadequate to put defendants on notice of the conduct alleged.

The complaint is also deficient because plaintiff fails to identify which defendants were managing the affairs of which enterprise.  The complaint exhibits a kitchen-sink style of pleading, which has resulted in a very confusing, imprecise, and muddied set of allegations and counts against defendants.  The complaint identifies six entities that qualify as enterprises under 18 U.S.C. § 1961(4).  The plaintiff also refers to an "Enterprise" with a capital "E" as in, "The Defendants…infiltrated the enterprise and conspired to use the Enterprise to facilitate the conspiracy[.]"  This use of "Enterprise" suggests the existence of another sort of enterprise, in addition to the six identified.  Perhaps plaintiff has attempted to allege an association-in-fact enterprise, consisting of the various defendants.  However, plaintiff has fallen far short of pleading an association-in-fact enterprise.

This lack of clarity is fatal to plaintiff's claims.  RICO claims under 18 U.S.C. 1962(c) require a showing that each defendant directly or indirectly conducted or participated in an enterprise's affairs through a pattern of racketeering activity.  The complaint fails to allege specifically which enterprise's affairs each defendant conducted through a pattern of racketeering activity.  The complaint strongly suggests that Suburban Buick is one such enterprise, but the complaint is vague as to whether the allegations apply to the conduct of any other identified enterprise and/or an association-in-fact enterprise.

Further, under 18 U.S.C. 1961(1), racketeering activity includes the predicate acts of wire fraud, mail fraud, and money laundering.  Plaintiff has alleged three separate counts against the

"Defendants" for each of these predicate acts, but entirely fails to identify which defendant is being accused of engaging in any of these predicate acts.

Finally, the court agrees that plaintiff's attempt to seek injunctive relief at this stage is improper. The complaint, on its face, is unclear as to whether plaintiff is seeking pre-judgment or post-judgment injunctive relief. To the extent that the complaint is seeking pre-judgment relief, the court refers the parties to its March 27, 2008, Order in which it denied plaintiff's motion for a preliminary injunction (Dkt. 76). To the extent that plaintiff is seeking post-judgment relief, it is premature. Plaintiff has brought its claim for injunctive relief under 18 U.S.C. § 1964, which specifies remedies available for RICO violations. The court has jurisdiction "to prevent and restrain [RICO] violations" under section 1964(a). Pursuant to the Seventh Circuit's holding in Nat'l Org. of Women, Inc. v. Scheidler, plaintiff has statutory authority under 1964(c) to seek injunctive relief in a private action for RICO violations. 267 F.3d 687, 695-700 (7th Cir. 2001), aff'g 897 F. Supp. 1047, 1083 (N.D. Ill. 1995), rev'd on other grounds, 537 U.S. 393 (2003). If plaintiff is able to state an actionable RICO claim, plaintiff has the right under 1964(c) to seek injunctive, as well as monetary, relief. Thus, the issue may remain alive, and the court can revisit this if and when injunctive relief is sought upon the court's determination of liability. The request for equitable relief should be included in plaintiff's prayer for relief rather than in a separate count.

For the foregoing reasons, the court grants J. Gargo's motion to dismiss as to all counts.

# III.     G. GARGO'S AND THE GARGO SONS' MOTIONS TO DISMISS

Defendants, G. Gargo and the Gargo Sons, move to dismiss plaintiff's complaint on Rule 9(b) and 12(b) grounds. They contend that plaintiff fails to lodge specific allegations of wrongdoing. The court agrees.

Section 1962(c) makes it unlawful for "any person employed by or associated with [an] enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of [an] unlawful debt." 18 U.S.C. § 1962(c). Section 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Consequently, a plaintiff must show that the defendants conducted the affairs of some legal entity or group of individuals *through* a pattern of racketeering (i.e., criminal) activity.[5]

Plaintiff has failed to allege adequately that G. Gargo or the Gargo Sons conducted the affairs of any of the identified enterprises through a pattern of racketeering activity. Plaintiff has done nothing more than allege that G. Gargo is a co-owner of Gargo Custom Homes and the wife of the alleged mastermind, J. Gargo. Plaintiff has simply alleged that the Gargo Sons were hired by their father without Suburban Buick's authorization, they received unauthorized compensation, and D. Gargo served as a manager of Suburban Buick. Plaintiff has not alleged that any of these defendants had knowledge of the alleged scheme or did anything in furtherance of the schemes. Because racketeering activity under RICO involves predicate acts of fraud,

---

[5]Several of the defendants incorrectly argue that plaintiff fails to allege how they directed or controlled the affairs of a "criminal enterprise." A plaintiff need not show that the defendants conducted the affairs of a "criminal enterprise."

plaintiff must allege that the predicate acts were committed willfully or with actual knowledge of the illegal activity. See Emery v. Am. Gen. Fin., Inc., 71 F.3d 1343, 1346-1348 (7th Cir. 1995) (discussing intent requirement for mail and wire fraud claim); Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) (upholding complaint's dismissal where plaintiff failed to allege sufficient facts for inference of fraudulent intent). Plaintiff has alleged neither willfulness nor knowledge. While the court may draw reasonable inferences from the facts alleged in the plaintiff's favor, any inferences as to these defendants' conduct would go well beyond the four corners of the complaint.

For the foregoing reasons, the court grants G. Gargo's and the Gargo Sons' motions to dismiss.

## IV. POLLACK AND YOUNG'S JOINT MOTION TO DISMISS

Defendants Pollack and Young move to dismiss plaintiff's complaint in light of, 1) contradictory information contained in police reports[6] attached to their motion, and 2) because they acted at the direction of others. Neither of these arguments is applicable to the pending motions to dismiss, but would resonate if this court were considering motions for summary judgment.

First, when reviewing motions to dismiss, the court is constrained to the four corners of the complaint. The police reports were neither attached to nor referenced in or central to plaintiff's amended complaint. Because this is a motion to dismiss and not a motion for summary judgment, the court will not consider the documents or other materials beyond those

---

[6]The referenced police reports suggest that Pollack and Young discovered, investigated, and reported the alleged auto body repair scheme.

attached to the complaint itself. See Scibetta v. Rehtmeyer, No. 04C5246, 2005 U.S. Dist. LEXIS 5563, at *4-*5 (N.D. Ill. Feb. 9, 2005) (citing Wright v. Assoc. Ins. Companies, 29 F.3d 1244, 1248 (7th Cir. 1994) (internal citations omitted); compare Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (affirming consideration of contracts attached to motion, as the parties' contractual obligations were central to the complaint).

Second, Pollack and Young assert that they neither facilitated nor were responsible for any of the alleged unauthorized pay increases, much less "actively participated in, knew about or conspired with the other Defendants," because they acted at the direction of others. This argument is also not suited for the motion to dismiss context and is better suited for summary judgment, where the court's scrutiny extends beyond the complaint to other evidence in the record.

For the foregoing reasons, Pollack and Young's joint motion to dismiss is denied, although the claims against them are dismissed along with the claims against the other defendants.

## V.      MELVIN AND OWEN'S MOTIONS TO DISMISS

### A.      RICO Claims (COUNTS I, II, and III)

Defendants Melvin and Owen seek dismissal of plaintiff's RICO claims on the grounds that, 1) plaintiff has failed to plead with particularity the nature of their alleged fraudulent conduct in the "alleged criminal enterprise,"[7] and 2) plaintiff has failed to state a claim upon which relief can be granted, especially because plaintiff has failed to "establish" that it is the

---

[7] As already explained, RICO violations do not arise from the operation of a "criminal enterprise," but from the operation of an enterprise for criminal purposes.

defrauded and damaged party.  The court agrees that plaintiff's RICO claims should be dismissed for failure to plead with particularity, but disagrees that plaintiff bears the burden of "establishing" anything at the pleading stage.

### 1.    18 U.S.C. § 1962

As the court has already noted, the complaint lacks particularity in a myriad of ways. Most significantly, the amended complaint lacks a clear identification of the specific section of the RICO statute at issue.  As plaintiff duly notes in its amended complaint, 18 U.S.C. § 1964 provides a private right of action for injuries incurred as a result of violations of section 1962. Subsection (a) of § 1962 proscribes the investment of income, derived from a pattern of racketeering activity, in or for the establishment or operation of an enterprise that affects interstate or foreign commerce.  Subsection (b) proscribes persons from acquiring or maintaining control of an enterprise that affects interstate or foreign commerce through a pattern of racketeering activity.  Subsection (c) proscribes persons employed by or associated with an enterprise that affects interstate or foreign commerce from conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity.  Subsection (d) proscribes conspiracies to violate any of the aforementioned provisions.

Plaintiff fails to identify with clarity which subsection has been violated.  Each of the RICO counts contains a reference to section 1962(a)'s prohibition of the use or investment of income derived from a pattern of racketeering activity.  However, at no point has plaintiff alleged any injuries resulting from defendants' investment of income derived from racketeering activity.  An allegation of injuries resulting from such investments is a necessary component of a

section 1962(a) claim. See <u>R.E. Davis Chem. Corp. v. Nalco Chem. Co.</u>, 757 F. Supp. 1499, 1524-1525 (N.D. Ill. 1990).

To further complicate matters, earlier in the amended complaint plaintiff alleges that a number of defendants "infiltrated the enterprise and conspired to use the Enterprise to facilitate the conspiracy and conduct unlawful acts." This suggests that the action is premised on a violation of 1962(c). However, without more specificity neither the court nor the defendants can be sure. Melvin and Owen appear to construe the action as one premised on a subsection 1962(c) violation and seek dismissal based, in part, on plaintiff's failure to allege with specificity that they conducted the affairs of the enterprise.

To state a claim under section 1962(c), plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Jennings v. Auto Meter Prods. Inc.</u>, 495 F.3d 466, 472 (7th Cir. 2007) (citing <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985)). Each of these elements must be pled with particularity. <u>Rolls-Royce Corp. v. Alcor Engine Co.</u>, No. 1:04-CV-0968, 2007 WL 1021450, at *5 (S.D. Ind. Mar. 29, 2007) (dismissal of RICO claims for, in part, failure to allege one of the elements with particularity). A plaintiff must allege that defendants have engaged in at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten-year period. Plaintiff alleges that defendants committed various predicate acts of wire fraud, mail fraud, and money laundering. Melvin and Owen contend that plaintiff has failed to plead the particularities of the predicate acts.

## 2. Conduct

Melvin and Owen argue that plaintiff fails to allege that they controlled the operations of the enterprise. The court agrees.

To "'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (referring to 18 U.S.C. § 1962(c)). "In other words, [the defendant] must have participated in the operation or management of the enterprise itself." United States v. Swan, 250 F.3d 495, 498 (7th Cir. 2000); see also Reves, 507 U.S. at 185. While adopting this "operation or management test," the Reves court noted that "an enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." Reves at 184; see also MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 979 (7th Cir. 1995) (reversing dismissal of section 1962(c) claim against lower-rung employees).

As previously noted, plaintiff has identified several entities as enterprises under 18 U.S.C. 1961(4), including Suburban Buick and COAB. Plaintiff has alleged several facts that Melvin conducted the affairs of the Suburban Buick enterprise. As Suburban Buick's parts department manager, Melvin had the ability and authority to maintain Suburban Buick's auto parts inventory, including ordering auto parts for Suburban Buick's vehicles and managing inventory records. Basic logic dictates that the parts department plays an important role in the affairs of a car dealership such as Suburban Buick.

With respect to Owen, plaintiff has adequately alleged that Owen conducted the affairs of the COAB enterprise. Owen is the owner of COAB. He has the ability to prepare and submit work orders for repair work on under-warranty vehicles sold by Suburban Buick, to funnel payments to other vendors for work purportedly done on vehicles, and to order auto parts to complete repair work.

However, the amended complaint is unclear as to whether Melvin and/or Owen also conducted the affairs of other identified enterprises, such as Go Service ("GO Service is an enterprise created by Defendants to defraud Suburban Buick of monies"), Auto Service South ("Auto Service South is an enterprise created by Defendants to defraud Suburban Buick of monies"), or the undefined "Enterprise." This confusion is heightened in the parties' briefs, where Melvin and Owen refer to another enterprise, an "alleged *criminal* enterprise." Plaintiff's response brief fails to refute the existence of this other enterprise.

### 3. Particularities of the Predicate Acts

A RICO complaint "must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating the fraud." United States Textiles, Inc. v. Anheuser-Busch Cos., 911 F.2d 1261, 1268 n.6 (7th Cir. 1990) (quoting New England Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987). The pleadings must go beyond "loose references to mailings and telephone calls." R.E. Davis Chem. Corp. v. Nalco Chem. Co., 757 F. Supp. 1499, 1516 (N.D. Ill. 1990). "Pattern" under RICO "consists of at least two predicate acts of racketeering committed within a ten-year period." Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 779 (7th Cir. 1994) (citing 18 U.S.C. § 1961(5)). However, a plaintiff must allege more than just the occurrence of two predicate acts. A plaintiff "must show that the predicate acts are related, and that they amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). The Seventh Circuit has set forth a multi-factor test for determining the relationship and

continuity[8] of the predicate acts: 1) the number and variety of predicate acts, 2) length of time over which the predicate acts were committed, 3) the number of victims, 4) the presence of separate schemes, and 5) the occurrence of distinct injuries. <u>Morgan v. Bank of Waukegan</u>, 804 F.2d 970, 975-76 (7th Cir. 1986). Length of time is the most-important, but not all-determinative, factor. <u>See</u> <u>Midwest Grinding Co. v. Spitz</u>, 976 F.2d 1016, 1024 (7th Cir. 1992); <u>see</u> <u>also</u> <u>Vicom</u>, 20 F.3d at 780.

In the instant case, Melvin and Owen assert that plaintiff has also failed to set forth the details of the predicate acts. The court agrees. For example, although plaintiff has alleged three schemes (auto body repair scam, auto parts scam, and unauthorized pay and salary scam), plaintiff has failed to identify sufficiently the mail and wire transmissions that furthered the scams. In its claim for wire fraud (Count I), plaintiff asserts that "between November 1996 through April, 2005, Defendants, in whole or in part, committed <u>numerous</u> separate acts [of wire fraud]". (emphasis added). Plaintiff then identifies <u>only two</u> specific instances on which "[d]efendants" submitted allegedly fraudulent repair orders, in an attempt to demonstrate that at least two acts of racketeering activity occurred within ten years of one another. Plaintiff's allegations are similarly broad in its claim for mail fraud (Count II). Plaintiff fails to identify the frequency or number of transmissions, the dates of the transmissions, or even which defendants conducted the alleged predicate acts. Consequently, plaintiff has failed to allege sufficiently a pattern of racketeering activity.

### 4.      Defrauded or Damaged Party

---

[8]The Supreme Court identified the existence of two types of continuity: a) closed, namely a "closed period of repeated conduct" or b) open-ended, namely "past conduct that by its nature projects into the future with a threat of repetition". <u>H.J., Inc.</u>, 492 U.S. at 241.

Defendants Melvin and Owen assert that plaintiff's RICO claims should be dismissed because plaintiff has failed to "establish" that it was defrauded and damaged. To survive a motion to dismiss, a plaintiff need not "establish" anything; a plaintiff must only allege. A RICO plaintiff alleging predicate acts of fraud need not show that it relied on defendants' alleged misrepresentations. See Bridge v. Phoenix Bond & Indemnity Co., 128 S.Ct. 2131, 2139, 2145 (2008), aff'g 477 F.3d 928 (7th Cir. 2007). A plaintiff need allege only that the defendants' scheme was a proximate cause of its injuries. Holmes v. Secs. Investor Protection Corp., 503 U.S. 258, 268-69 (1992); see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). In the instant case, plaintiff has alleged that it suffered damages resulting from defendants' conduct. As examples, plaintiff has alleged deprivation of its right to receive the honest services of its employees, loss of property, and loss of funds. These allegations of damages are sufficient. At the pleading stage, injuries (including those resulting from fraudulent conduct), need not be identified with particularity. Recreation Servs. v. Odyssey Fun World, 952 F. Supp. 594, 597 (N.D. Ill. 1997).

In sum, although plaintiff has pled damages sufficiently, it has failed to state substantive claims for RICO violations of wire fraud (Count I), mail fraud (Count II), or money laundering (Count III). Melvin and Owen's motions to dismiss are granted.

**B.      Conversion (Count V)**

To state a claim for conversion, plaintiff must allege: 1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; 2) plaintiff's right to the property; 3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and 4) a demand for possession of the property. Fonda v. Gen.

Casualty Co. of Ill., 279 Ill.App.3d 894, 899 (1ˢᵗ Dist. 1996). Because the claim alleges a conversion of money, the money must be capable of being described as a specific chattel, meaning plaintiff must have a right to "a specific fund or specific money in coin or bills." Mid-America Fire and Marine Ins. Co. v. Middleton, 127 Ill.App.3d 887, 892 (4ᵗʰ Dist. 1984). The money does not have to be "specifically earmarked" for plaintiff, and need not always be a segregated fund, but the converted funds must be "capable of being described, identified or segregated in a specific manner." Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York, No. 05C5749, 2007 WL 1017858 at *24 (N.D. Ill. Mar. 30, 2007) (and cases cited therein).

In count V, plaintiff claims that defendants converted in excess of $250,000.00 of plaintiff's property, including funds, for their personal use and gain. The complaint contains various allegations of how defendants converted plaintiff's property, including auto parts from plaintiff's inventory and funds in an alleged payroll scam. Defendants, Melvin and Owen seek dismissal of this count because of its purported failure to state a claim for conversion under Rule 12(b)(6). In sum, defendants argue that plaintiff lodges "undefined" allegations as to plaintiff's right to the converted property and fails to allege that it demanded the property's return. The court agrees this count should be dismissed.

In the instant case, plaintiff alleges that defendants converted certain funds belonging to plaintiff in an unauthorized pay and salary scam and deposited these fraudulently obtained funds into various bank accounts. Plaintiff also alleges that some of the defendants attempted to conceal the converted funds by investing in real estate, businesses, or paying off personal expenses. Some of the defendants also converted auto parts from plaintiff's inventory and

profited from the sales of the stolen goods.

Plaintiff's claim is dismissed for indefiniteness because it is premised, at least in part, on the conversion of funds taken directly from plaintiff's coffers (as in the salary scam) or by indirect means (through the sale of stolen auto parts). Plaintiff cannot identify which specific funds went to which defendant or even if any of those funds are still in defendants' possession, especially given defendants' purported attempts to conceal the nature of the funds. In short, plaintiff alleges a general debt owed by defendants to plaintiff, which is insufficient to state a claim for conversion of money. See TABFG, LLC v. Richard Pfeil, No. 08 C 6979, 2009 WL 1209019 (N.D. Ill. May 1, 2009).

### C.     Civil Conspiracy (Count VI)

To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between at least two people for the purpose of accomplishing some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement. Faith Freight Forwarding Corp. v. Ruiz, No. 95C7560, 1997 WL 159207, at *5 (N.D. Ill. March, 24, 1997). Additionally, a plaintiff must allege not only an agreement, but some factual allegation suggesting a "meeting of the minds." Kunik v. Racine County, Wis., 946 F.2d 1574, 1580 (7th Cir. 1991). "[A] conspiracy claim sounding in fraud must be pled with particularity." Platinumtel Communs., LLC v. Zefcom, LLC, No. 08-CV-1062, 2008 WL 5423606, at *8-*9 (N.D. Ill. Dec. 30, 2008). Failure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim. Id.; see also Cumis Ins. Soc'y v. Peters, 983 F. Supp. 787, 794 (N.D. Ill. 1997). Defendants Melvin and Owen argue that Count VI is deficient because plaintiff fails to set forth the elements of civil conspiracy with the

required specificity under Fed. R. Civ. P. 9(b). The court agrees.

In the instant case, plaintiff alleges that "[d]efendants agreed on multiple levels and in multiple conspiracies to defraud Suburban Buick." Later, plaintiff alleges that "multiple overt acts were committed by all members of the conspiracy in furtherance of the common scheme to defraud Suburban Buick." Plaintiff has failed to allege any specific agreement or any facts that suggest a "meeting of the minds" among all the defendants. Plaintiff has identified three different schemes and at least six different entities. According to plaintiff's description, not every defendant was involved in each scheme and not every defendant was operating within each identified entity. This renders each defendant's knowledge of, much less agreement to participate in, every scheme unlikely.

Plaintiff's style of pleading leaves the reader wholly confused as to the number of conspiracies plaintiff has alleged. Further, as previously discussed, plaintiff has not pled its underlying fraud claims with particularity. Accordingly, Melvin's and Owen's motions to dismiss plaintiff's civil conspiracy claim are granted.

## CONCLUSION

For the reasons stated above, plaintiff's first amended complaint is dismissed. This matter is set for status on June 11, 2009 at 9:00 a.m., at which time plaintiff may request leave to file a second amended complaint.


**ENTER:      May 29, 2009**

_____
**Robert W. Gettleman**

**United States District Judge**