IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUBURBAN BUICK, INC., ) | |
| ) | |
| Plaintiff, ) | No. 08 CV 370 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JERRY D. GARGO, GAIL A. GARGO, ) | |
| NICHOLAS G. GARGO, DANIEL J. GARGO ) | |
| CHARLES N. OWEN, individually and ) | |
| as President of CHUCK OWEN AUTO BODY, ) | |
| INC., DAVID C. MORMAN, individually and as ) | |
| President of DAVE'S AUTO BODY, GREG S. ) | |
| MELVIN, KATHERINE POLLACK, ) | |
| ROSEMARY YOUNG, GARGO CUSTOM ) | |
| HOMES, and GO SERVICE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Suburban Buick, Inc. filed a six-count corrected second amended verified complaint against ten defendants,[1] alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, based on wire fraud (Count I), mail fraud (Count II), and money laundering (Count III), and seeking injunctive relief (Count IV). Plaintiff also alleges state law claims for conversion (Count V) and civil conspiracy (Count VI). Plaintiff previously filed a first amended verified complaint, which this court dismissed pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). Suburban Buick v. Gargo, No. 08-CV-00370, 2009 WL 1543709 (N.D. Ill. May 29, 2009). Defendants Jerry Gargo, Gail Gargo, Nicholas Gargo, and Daniel

---

[1] Jerry D. Gargo; his wife, Gail A. Gargo; their sons, Nicholas G. and Daniel J. Gargo; Charles N. Owen; Owen's company, Chuck Owen Auto Body, Inc. ("COAB"); David C. Mormon; Mormon's company, Dave's Auto Body; Greg S. Melvin; Katherine Pollack; Rosemary Young; and two companies started by Jerry Gargo, Gargo Custom Homes and GO Service.

Gargo; Charles N. Owen and Chuck Owen Auto Body; and Greg S. Melvin have filed the instant motions to dismiss the complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). For the following reasons, the court grants defendants' motions to dismiss.

**BACKGROUND**

The following facts come from the complaint, and for purposes of evaluating defendants' motions to dismiss, the court takes them as true. Defendants engaged in an association-in-fact enterprise through which they conspired to defraud Suburban Buick, a General Motors car dealership in Wheaton, Illinois, of money and the honest value of its employees' services. Jerry Gargo, a manager and officer at Suburban Buick, was the central figure in the conspiracy. He hired his sons, Nicholas and Daniel Gargo, to work at Suburban Buick; Daniel Gargo served as a manager. Charles Owen was Suburban Buick's auto body shop manager, and when Suburban Buick dissolved its body shop, Owen became the owner and principal operator of Chuck Owen Auto Body, Inc. David Mormon, formerly a Suburban Buick employee, owns and operates Dave's Auto Body. Greg Melvin served as the Parts Department Manager of Suburban Buick. Katherine Pollack was Suburban Buick's Treasurer and Chief Financial Officer, and Rosemary Young was the Accounts Payable and Payroll Manager. Gargo Custom Homes is an entity through which the owners, Jerry Gargo and his wife, Gail Gargo, invested funds they fraudulently obtained from Suburban Buick. Jerry Gargo organized GO Service to facilitate the conspiracy.

Defendants conspired to engage in a pattern of racketeering activity by operating three kinds of scams: (1) an auto repair and auto body repair scam ("repair scam"); (2) an auto parts scam ("parts scam"); and (3) an unauthorized pay and salary scam.

2

**Repair Scam**

Defendants Jerry Gargo and Owen falsified work orders to defraud Suburban Buick of funds. To accomplish this scheme, they created work orders that requested unnecessary repairs for actual GM vehicles that were under warranty. Jerry Gargo, along with his sons, used vehicle identification numbers from cars they found in the lot of Gjovik Buick (a nearby Buick dealership) and from cars that were in their shop. To keep Suburban Buick customers satisfied when their cars were not promptly returned, Jerry Gargo gave them free loaner or rental cars. Suburban Buick paid for these loaner and rental cars.

Jerry Gargo and Owen outsourced this false "repair work" to Owen's company, Chuck Owen Auto Body. Owen provided Suburban Buick with invoices on his company's letterhead, and Suburban Buick paid Owen accordingly. Because the vehicles were under warranty, General Motors reimbursed Suburban Buick for its payments to Owen. Owen sent approximately half of his proceeds to GO Service, a company Jerry Gargo owned. Jerry Gargo and Owen had monthly meetings in furtherance of the scheme, and Jerry Gargo controlled the billing and money. As a result of the repair scam, Suburban Buick lost time, resources, and, because Jerry Gargo overpaid the service technicians "to keep [them] quiet about what he was doing," money. Suburban Buick also lost many of its customers when the scheme was uncovered and stopped.

**Parts Scam**

Jerry Gargo and Melvin sold auto parts to Owen at half of Suburban Buick's cost. They operated the scheme through the following series of exchanges: First, Owen called Jerry Gargo with a request for a specific auto part. Jerry Gargo redirected the call to Melvin (Suburban

Buick's parts department manager), who then ordered the part using Suburban Buick's funds. As soon as Melvin received the part, he removed it from Suburban Buick's inventory and manipulated inventory records to conceal the theft. Jerry Gargo and Melvin then sold the part to Owen and split the proceeds. Owen, knowing the part had been stolen, sold it to a customer at full retail price.

Further, Melvin and Jerry Gargo sold David Mormon, a former Suburban Buick mechanic, transmissions for less than Suburban Buick's typical retail price. General Motors reimbursed Suburban Buick for the costs of these transmissions in reliance on Jerry Gargo's representations that the transmissions were for vehicles under warranty.

**Unauthorized Pay and Salary Scam**

Jerry Gargo (as general manager), Pollack (as office manager and treasurer), and Young (as Pollack's assistant) used their authority and positions to provide unauthorized pay increases and other compensation to themselves, the Gargo sons, and Melvin, without approval of Suburban Buick's board of directors. Jerry Gargo, Pollack, and Young had the authority to act as signatories on Suburban Buick's checks, and all three were signatories on direct deposit payroll checks. On at least ten occasions specified in the complaint, defendants gave and/or received unauthorized compensation from fall 2003 through summer 2004. Jerry Gargo also hired his sons without Suburban Buick's authorization, for the purpose of having them facilitate the repair scheme and to help him retrieve vehicle identification numbers from Gjovik Buick's used car lot. Additionally, because their compensation was partially based on a percentage of monthly sales, warranty repairs and parts, and the customer service index (which was inflated because customers were improperly receiving free repairs and loaner cars), the repair scam

caused Suburban Buick to overpay Jerry Gargo, Melvin, Pollack, and Young and other employees.

## DISCUSSION

**I.     Legal Standards**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court considers all well-pleaded allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff.  Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008).  This motion tests the sufficiency of the complaint, not its merits.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  The complaint must describe the claim in sufficient detail to give a defendant fair notice of what the claim is and the grounds on which it rests.  The complaint must also give enough details about the subject matter of the case to present a story that holds together.  The court then asks "itself could these things have happened, not did they happen."  Swanson v. Citibank N.A., 614 F.3d 400, 404 (7th Cir. 2010); see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Further, Counts I, II, III, V, and VI are subject to Fed. R. Civ. P 9(b)'s heightened pleading requirement: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  As used in Rule 9(b), "circumstances" means the "who, what, where, when, and how" of the alleged fraud.  Uni*quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) ("the plaintiff [must] state the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal quotation omitted).

5

In a case with multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted); see Zic v. Italian Gov't Travel Office, 149 F. Supp. 2d 473, 477 (N.D. Ill. 2001) ("The particularity requirement of Rule 9(b) means that a plaintiff may not 'lump' multiple defendants together in a fraud claim; he must identify the nature of defendant's participation in the alleged fraud."); Balabanos v. North Am. Inv. Group, Ltd., 708 F.Supp. 1488, 1493 (N.D. Ill. 1988) (in multiple-defendant cases, "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant").

## II.     Analysis

### A.     Counts I, II, and III: RICO

Counts I and II allege that defendants Jerry Gargo, Gail Gargo, Charles Owen, Chuck Owen Auto Body, David Morman, Dave's Auto Body, Katherine Pollack, Rosemary Young, Gargo Custom Homes, and Go Service committed predicate acts of wire fraud (Count I) and mail fraud (Count II) in violation of 18 U.S.C. § 1962. Count III alleges that defendants Jerry Gargo, Gail Gargo, Charles Owen, Chuck Owen Auto Body, David Morman, Dave's Auto Body, Gargo Custom Homes, and Go Service committed predicate acts of money laundering in violation of RICO. The relevant RICO violations are: 1) § 1962(a), which makes unlawful "the use or investment of any income derived directly or indirectly from a pattern of racketeering activity"; 2) § 1962(c), which makes it unlawful for "any person employed by or associated with [an] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity"; and 3) § 1962(d), which makes it unlawful for any person to conspire to violation any of the provisions of § 1962(a), (b), or (c).

The court's previous opinion identified a number of deficiencies in Counts I, II, and III of plaintiff's first amended complaint, which plaintiff attempts to correct by clarifying that it is alleging an association-in-fact enterprise, adding a variety of factual allegations, specifying which allegations apply to which defendants in Counts I and II (but not the other counts), and attaching to the second amended complaint five new exhibits: a Wheaton Police Report, a supplement to that report, a letter from a private investigator, an auditor report, and a letter from Greg Urban to Kim Bushy.

These exhibits supply at least some of the factual detail that was absent in the first amended complaint—for example, the police report lists vehicle identification numbers, check numbers, dollar amounts, and relevant dates—but they also provide a massive amount of information that is irrelevant, redundant, or, in places, contradictory. RICO is a complex statute, but that does not excuse plaintiff from complying with Rule 8(a). See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 776 (7th Cir. 1994). Moreover, the complaint's problem is more serious than a simple lack of brevity. It fails to specify which portions of the exhibits it intends to incorporate, and its loose citation style[2] leaves unclear which parts of the voluminous exhibits plaintiff intends to adopt as its allegations. Thus, the court cannot determine what facts are being alleged and, equally important, defendants do not have fair notice

---

[2] For example: "This practice is set forth in the Wheaton Police Report attached hereto as Exh. B."; "All of this is set forth in Exh. B."; "These details are set forth in the Wheaton Police Department Supplementary Report attached hereto as Exh.s [sic] A and B."; "This is set forth in the Special Operations Investigation Report attached hereto as Exh. C."; "See all of this detailed in the report Greg Urban attached hereto as Exh. E."

7

of the claims against them.  See 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969), quoted in Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) ("Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.").

These concerns are particularly troubling because of the inconsistencies between the second amended complaint and its exhibits.  For one example: the Wheaton Police Department Supplementary Report attached as Exhibit B includes a statement—apparently paraphrased from a statement Jerry Gargo made to the investigating police officer—that "[Jerry] Gargo and Owen were the only people involved in the warranty fraud [i.e., the repair scam] and thought nobody else knew about it."  The second amended complaint, however, contains allegations regarding who knew about the repair scam that conflicts with this statement.  It alleges that Nicholas and Daniel Gargo knowingly participated in that scam by helping to obtain vehicle identification numbers from the Gjovic Buick lot.  It also alleges that Suburban Buick's service technicians knew about the scheme: "to keep the service technicians quiet about what he was doing, [Jerry Gargo] overpaid them for labor and repairs done and for overtime not needed."

Faced with this discrepancy, defendants would be forced to decide which controls: the exhibit or the complaint.  The Seventh Circuit has instructed that when a complaint attaches as an exhibit letters written by a defendant, "[r]ather than accepting every word in [them] as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents."  N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998).  Applying this analysis, it is difficult to determine why plaintiff attached the document, other than sheer sloppiness.  The complaint states that "[t]his

8

practice [the repair scam] is set forth in the Wheaton Police Report attached hereto as Exh. B.," implying that the exhibit is to be considered to the extent that it describes the repair scam. This exhibit certainly describes that scam. Nonetheless, because the exhibit also undermines plaintiff's allegations that other individuals knew about the repair scam, it is unlikely that plaintiff meant to incorporate the entire exhibit into its allegations. Such uncertainties render the second amended complaint impossible to decipher.

Taken as a whole, the 48–page complaint and the 75 pages of exhibits thus contain an excess of, at best, superfluous detail that clearly violates Rule 8(a)'s "short and plain statement" requirement. And while plaintiff has failed to comply with Rule 8(a), neither has it complied with Rule 9(b)'s requirement that fraud allegations be pleaded with specificity. Plaintiff's RICO allegations are based on §§ 1962(a), (c), and (d), all of which require an "enterprise," but plaintiff has not remedied the previous complaint's failure to allege a RICO enterprise. Although the second amended complaint alleges that defendants were engaged in an "association-in-fact" enterprise, merely invoking that term is not enough. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," United States v. Turkette, 452 U.S. 576, 583 (1981), and it has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 129 S.Ct. 2237, 2244 (2009). Plaintiff has not alleged that defendants had a common purpose. Although an association-in-fact enterprise may sometimes be inferred from evidence of a pattern of racketeering activity, Turkette, 452 U.S. at 583, that is not the case when, as here, all that is alleged is that "several individuals, independently and without

9

coordination, engaged in a pattern of crimes listed as RICO predicates." Boyle, 129 S. Ct. at 2245 n.4. As the Supreme Court has explained, "[p]roof of these patterns would not be enough to show that the individuals were members of an enterprise." Id. The complaint alleges that some defendants worked in concert—for example, the monthly meetings alleged between Owen and Jerry Gargo—but it does not allege that all defendants were members of one enterprise with one common purpose. It therefore fails to state a RICO claim.

Accordingly, Counts I, II, and III are dismissed.

**B.      Count IV: Injunctive Relief**

Count IV, requesting injunctive relief under 18 U.S.C. § 1964, is unchanged from the first amended complaint. In dismissing the first amended complaint, the court held that Count IV was "an improper means of seeking injunctive relief." Suburban Buick, 2009 WL 1543709, at *5. The court suggested that plaintiff include an injunction in its prayer for relief rather than as a separate count. Id. Plaintiff ignored this advice, and moreover appears not to understand the relationship between claims for substantive and injunctive relief.[3] For the reasons explained in the court's previous opinion, Count IV is dismissed (again).

**C.      Count V: Conversion**

Count V, a state law claim for conversion, alleges a general debt, which—as the court previously explained—is insufficient to state a claim for conversion. See Shapo v. O'Shaughnessy, 246 F. Supp. 2d 935, 968 (N.D. Ill. 2002). Plaintiff continues to allege

---

[3]  Count IV does not specify whether plaintiff is seeking pre- or post-judgment injunctive relief. As the court explained in its March 27, 2008, order denying plaintiff's motion for a preliminary injunction (Dkt. 76), pre-judgment injunctive relief is inappropriate. Further, as the court explained in its May 29, 2009 opinion, post-judgment injunctive relief is premature, as defendants' liability has not yet been determined. Suburban Buick, 2009 WL 1543709, at *5.

conversion based on funds that are "not identifiable or segregated" into separate accounts. Id. Although funds need not necessarily be kept in a segregated account to constitute a specific chattel subject to a conversion claim, see Roderick Dev. Investment Co. v. Community Bank of Edgewater, 668 N.E.2d 1129, 1136 (Ill. App. Ct. 1996), they must then be otherwise "capable of being described, identified, or segregated in a specific manner." Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York, No. 03 C 5749, 2007 WL 1017858, at *24 (N.D. Ill. March 30, 2007). Plaintiff has not done so. Further, the conversion claim continues to fail to differentiate among defendants. Rather, it alleges that "the defendants and each of them, engaged in unauthorized and wrongful assumption and control, dominion and ownership over plaintiff's personality [sic]." This is insufficient to identify which funds which defendants allegedly converted. Thus, plaintiff has not stated a cognizable conversion claim for the funds.

Count V also includes allegations regarding a shotgun "that Gabor Bushy [plaintiff's principal] wanted one of his friends to have." Plaintiff alleges that the shotgun "was stolen from [Gabor Bushy's] office . . . and has not been returned," that Kim Bushy (Gabor's widow) has demanded its return, and, in the Wheaton Police Report attached as an exhibit (along with some irrelevant details about the gun), that the shotgun was missing from Gabor's office. Nowhere does the complaint allege that plaintiff (as opposed to Gabor) owned, had a right to, or had a right to immediate possession of the gun. See Fonda v. Gen. Casualty Co. of Ill., 665 N.E.2d 439, 442 (Ill. App. Ct. 1996) (reciting these as elements of conversion under Illinois law). The complaint also fails to allege that any specific defendant assumed control, dominion, or ownership of the shotgun. See id. Instead, the complaint states only that plaintiff "believes that Pollack knows the whereabouts of the shot gun and had something to do with its theft"—not that

11

Pollack or any other defendant controlled, owned, or otherwise possessed or exercised dominion over the shotgun. Further, the police report states that "Kim . . . suspects ex-employees Ray and Roy Trost," thus contradicting the allegation that Pollack "had something to do with its theft." These allegations do not suffice to state a claim for conversion.

Finally, plaintiff alleges conversion as to artwork credentials. The complaint alleges only that "defendants Gargo and Pollack stole the authenticating credentials to valuable art works hanging in the dealership," thus depriving the works of "their value which is believed to be in excess of $250,000," and that a demand for their return was made. The complaint fails to allege that plaintiff has a right to the credentials and a right to immediate possession of the credentials. Thus, because none of these allegations amount to a conversion claim, Count V is dismissed.

**D.     Count VI: Civil Conspiracy**

Count VI, which alleges that "[t]here was an agreement between the defendants for the purposes of accomplishing the unlawful acts alleged above by unlawful means," lacks the requisite specificity under Rule 9(b) as to which defendant participated in which scheme. Plaintiff responds that the rest of the complaint—which Count VI incorporates—provides a great deal of specificity, and lists which defendants are alleged to have performed which acts. Although that may be true, the rest of the complaint is inadequate for the reasons discussed above. Plaintiff therefore cannot rely on those allegations to plead its civil conspiracy claim. Defendants' motions to dismiss Count VI is granted.

## **CONCLUSION**

For the foregoing reasons, the court grants defendants' motions to dismiss. Counts I, II, III, and VI of the corrected second amended verified complaint are dismissed without prejudice.

Plaintiff is given leave to file a third amended complaint on or before May 26, 2011.[4]  Counts IV and V are dismissed with prejudice.  Defendants are ordered to answer or otherwise plead by June 23, 2011.  The status report previously set for May 5, 2011, is continued to June 30, 2011, at 9:00 a.m.

**ENTER:**     May 9, 2011

_____
**Robert W. Gettleman**
**United States District Judge**

---

[4] This will be plaintiff's fourth complaint.  If it fails to plead a sustainable third amended complaint, there will not be a fifth.